Garshasb Hamid **FARSIAN,**
**Plaintiff–Respondent,**

v.

**PFIZER, INC., Shiley, Inc.,**
**Defendants–Petitioners.**

**No. 94–6117.**

United States Court of Appeals,
Eleventh Circuit.

May 19, 1995.

---

James W. Gewin, Sid Trant, Bradley Arant Rose & White, Birmingham, AL, David Klingsberg, Kaye, Scholer, Fierman, Hays & Handler, New York City, for plaintiff.

Roger L. Lucas, Lucas, Alvis, Kirby & Wahs, Elizabeth R. Jones, Birmingham, AL, for defendants.

Before HATCHETT and COX, Circuit Judges, and JOHNSON, Senior Circuit Judge.

PER CURIAM:

Garshasb Farsian sued Shiley, Inc., and its parent corporation Pfizer, Inc., (hereinafter collectively referred to as Shiley) alleging, among other things, that they fraudulently induced Farsian to receive a Bjork–Shiley heart valve implant by not revealing to Farsian certain risks and defects. Shiley moved for summary judgment, contending that because Farsian's valve was working properly, the claim should fail. Although the district court denied Shiley's motion, the court certified, pursuant to 28 U.S.C. § 1292(b), that the order involved a controlling question of law as to which there is substantial ground for difference of opinion, and we permitted an interlocutory appeal. The issue on appeal is whether the district court properly denied Shiley's motion for summary judgment. Because the resolution of this issue involves a question of Alabama law that we find unanswered by controlling precedent, we certify a question to the Supreme Court of Alabama pursuant to Ala.R.App.P. 18.

When Farsian's cardiologist recommended heart surgery in 1980, he allegedly discussed with Farsian two types of heart valves. According to Farsian, the doctor recommended Shiley's valve because it was an outstanding valve and would never have to be replaced. The alternative, a pig valve, would wear out in ten or fifteen years and have to be replaced.[1] Farsian asserts that he relied on information provided by his doctor and from Shiley that Shiley's heart valve was the best on the market and would last indefinitely, and consequently he chose to have Shiley's heart valve implanted.

But Farsian now asserts that he was misled. Farsian contends that during clinical trials in 1978, Shiley's heart valve experienced the first of many strut failures.[2] Shiley allegedly told the FDA that the failure was an anomaly. As of 1990, however, Shiley has reported a total of 295 fractures, resulting in 178 deaths.[3] Farsian contends that when he received Shiley's heart valve in 1981, Shiley was engaging in fraudulent conduct by marketing the valve despite knowing of serious manufacturing problems that directly related to the fracture problem in the valve. Farsian also contends that Shiley never informed him or his physician of the fracture problem prior to implantation. Farsian asserts that despite evidence of a serious manufacturing problem, Shiley misled physicians and the public by understating the incidence of strut fractures in a "Dear Doctor" letter in 1980, and by instructing the valve's creator not to publish any information relative to strut fracture. Shiley removed some of these heart valves from the market in 1985, allegedly under pressure from the Health Research Group and the FDA, and removed all remaining valves in 1986. Farsian asserts that he would not have allowed Shiley's valve to be implanted in his heart had he known of the strut fracture risk.

Farsian sued Shiley in Alabama state court, alleging that Shiley made intentional, reckless, or negligent misrepresentations about the fitness of the valve, that Farsian relied on the representations, and that Shiley knew the representations to be false. Farsian also alleges that Shiley fraudulently concealed and withheld information from him and his medical providers regarding strut fracture with the intent to deceive, and in reliance on the fraudulently concealed information, Farsian was induced to have Shiley's

---

1. The other major difference between the two valves is that patients in whom Shiley's valve is implanted must take medication to thin their blood for the rest of their lives, whereas patients with pig valves need not take the medication.

2. The valve is basically a disc located inside a ring that is sutured to the heart. It opens and closes rhythmically, allowing blood to flow through the heart. The disc is held in place by two wire holders called inflow and outflow struts, located on each side of the disc. The valve failure relevant to this case is caused when the outflow strut fractures. When the strut is fractured, the disc escapes from the ring, causing uncontrolled blood flow through the heart. Death results in approximately two-thirds of strut fracture incidents. (R. 1–42, Ex. 1 at 2.)

3. According to a congressional report, the number of reported fractures and resulting deaths "is generally agreed to be greatly understated because the distress signs of patients with common heart seizures and fracture problems are similar and autopsies are not always taken." (R. 1–42, Ex. 1 at 2.)

valve implanted. As a result of Shiley's conduct, Farsian contends that he has suffered damages to the extent that the implanted valve, with its higher rate of fracture and risk of death, is worth less than the valve Shiley represented he would receive. Farsian also alleges that he has suffered mental anguish and emotional distress since he learned of Shiley's fraud. Moreover, he states that he wishes to undergo surgery to have Shiley's valve removed and replaced, and he seeks remuneration for the expenses related to this procedure. Farsian also seeks punitive damages.

The case was removed from state court to federal court based on diversity of citizenship. Thereafter Shiley moved for summary judgment, contending that although there is an alleged risk of possible future malfunction of the valve, it is uncontroverted that Farsian's valve is and has been working properly. Shiley contends that Farsian is really asserting a product liability claim. Shiley asserts that under Alabama product liability law, a cause of action regarding an implanted medical device accrues only when an "injury-producing malfunction" occurs. According to Shiley, an allegation of fraud does not relieve the consumer from having to prove an injury-producing malfunction. Because Farsian has suffered no injury-producing malfunction, Shiley argues that Farsian's claim fails.

Farsian, however, maintains that his claim is based on fraud, not product liability. Farsian contends that in Alabama, claims against manufacturers are not governed by a product liability law that subsumes all other theories of liability. Therefore, he argues that he may recover damages on his fraud claim even if he cannot prove that his valve is not working properly.

The district court denied Shiley's motion for summary judgment, and Shiley appeals. Because we find that this appeal involves a question of Alabama law that is determinative of the issue before this court and is unanswered by controlling precedent of the Supreme Court of Alabama, we respectfully certify the following question to the Supreme Court of Alabama:

DOES A HEART VALVE IMPLANTEE HAVE A VALID CAUSE OF ACTION FOR FRAUD UNDER ALABAMA LAW IF HE ASSERTS THAT THE VALVE'S MANUFACTURER FRAUDULENTLY INDUCED HIM TO HAVE THE VALVE IMPLANTED WHEN THE DAMAGES THAT HE ASSERTS DO NOT INCLUDE AN INJURY–PRODUCING MALFUNCTION OF THE PRODUCT BECAUSE THE VALVE HAS BEEN AND IS WORKING PROPERLY?

We do not intend the particular phrasing of this question to limit the Supreme Court of Alabama in its consideration of the certified issue. To assist consideration of the issue, the record, along with the briefs of the parties, shall be transmitted to the Supreme Court of Alabama.

QUESTION CERTIFIED.